EDGAR D. PRESTON v. MABEL A. STOVER, ADMINISTRATRIX
OF THE ESTATE OF GEORGE W. STOVER, DECEASED.

FILED DECEMBER 16, 1903.   No. 13,212.

1. **Directing Verdict**: REVIEW.  In reviewing the action of a trial court
in directing a verdict, this court will regard as conclusively
established every fact favorable to the unsuccessful party which
the evidence proves or tends to establish.

2. **Statutes**: AMENDMENT.  Under the old as well as under the present
constitution, where the title to a bill is to amend a particular
section of an act, no amendment is permissible which is not
germane to the subject matter of the original section.

3. **Unconstitutional Law**.  Previous to the act of 1903, section 1021 of
the code, as amended by an act of 1875, p. 43, entitled "An act to
amend section 1021 of the code of civil procedure, Revised
Statutes, 1873," was obnoxious to the foregoing rule, and uncon-
stitutional.

4. **Lease**: ACTION.  Where a lease provides, in effect, that, upon failure
of the lessee to keep and perform certain covenants and agree-
ments therein contained the lessor may terminate the lease and
recover possession by action of forcible entry and detainer, such
action may be maintained upon a breach of such covenants and
agreements by the lessee, although the lease has not terminated
by efflux of time.

ERROR to the district court for Hamilton county:
SAMUEL H. SORNBORGER, JUDGE.  *Reversed.*

*E. J. Hainer and J. H. Smith,* for plaintiff in error.

*John H. Whitmore, contra.*

ALBERT, C.

The record in this case is of an action of forcible entry
and detainer brought in the county court on the 4th day
of December, 1902, and thence carried on appeal to the
district court.  At the close of the plaintiff's evidence in
the district court, the court directed a verdict for the de-
fendant, and the plaintiff brings the record here for re-
view.

It is a familiar rule that, in reviewing the action of a

trial court in directing a verdict, the reviewing court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish. Applying that rule, it is conclusively established in this case that at the commencement of this action the plaintiff was the owner in fee of the premises, and that the defendant had entered upon and retained possession thereof under a written lease between him and the plaintiff, executed on the 13th day of February, 1902, whereby the premises were let to the defendant for the term of one year from the first day of March, following the execution of the lease. Among other terms and conditions of the lease are these:

"Said second party shall take good care of all buildings, fences, structures, trees of every kind, shrubbery, or other improvements upon said premises and shall keep the ground about the same free from weeds. The said party of the second part further covenants with the said party of the first part that, at the expiration of the time menioned in this lease, peaceable possession of the said premises shall be given to the party of the first part in as good condition as they now are, the usual wear, inevitable accidents, and loss by fire excepted; and that upon the nonpayment of the whole or any portion of the said rent at the time when the same is above promised to be paid, or a failure to perform any other agreement herein contained on his part to be done or performed, then the said party of the first part may, at his election, either distrain for said rent due, or declare this lease at an end and recover possession as if the same was held by forcible detainer, the said party of the second part hereby waiving any notice of such election or any demand for the possession of said premises."

"And it is further covenanted and agreed between the parties aforesaid, that the said second party is to pay cash rent for the use of pasture land and hog yard, at the rate of $2.50 an acre, payable on the 1st day of November, and it is expressly understood and agreed that this lease

operates as a lien upon said crops for the payment of said cash rent as above described."

It is also established that on the first or second day of November, 1902, the plaintiff demanded payment of the cash rent reserved in the lease, that the plaintiff failed to pay the same, and that the same was unpaid at the time the case was tried in the district court; that without the consent of the plaintiff, during the defendant's occupancy under the lease, he had cut down some forty trees which had been planted on the premises and were growing there, and burned them for fuel; and that due notice to vacate the premises had been given the defendant more than three days before the commencement of this action. Section 1021 of the code, as it stood when this action was brought, was as follows:

"A tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent, or any part thereof, when the same was due, and judgments, either before the justice or in the district court, under this chapter, shall not be a bar to any after action brought by either party."

That section was passed in 1875 as amendatory of section 1021 of the Revised Statutes, which was as follows:

"Judgments, either before the justice or in the district court, under this chapter shall not be a bar to any after action brought by either party."

The amendatory act was passed under the old constitution. Section 19, article II, of which provided:

"No bill shall contain more than one subject, which shall be clearly expressed in its title; no law shall be revived or amended, unless the new act contain the entire act revived, and the sections amended; and the section or sections so amended shall be repealed."

This provision, so far as it bears on the present case, is substantially the same as the constitutional provision now in force relating to the same subject. In construing the latter, this court has frequently held that, where the title to a bill is to amend a particular section, no amendment is

permissible which is not germane to the subject matter of the section sought to be amended. *Trumble v. Trumble,* 37 Neb. 340; *State v. Tibbets,* 52 Neb. 228; *Armstrong v. Mayer,* 60 Neb. 423. A comparison of the amendatory act with that sought to be amended clearly shows that the former is obnoxious to the foregoing rule of construction, and is therefore unconstitutional and void. This view of the amendatory act has been entertained by the profession for some time, and in consequence an act covering the same subject was passed, with an emergency clause, at the last session of the legislature. Sec. 1020 of the code. From the foregoing it follows that, when this action was commenced, there was no statute in force whereby "a tenant should be deemed to be holding over his term when he failed, neglected or refused to pay the rent, or any part thereof, when the same became due."

This brings us to the question, whether, upon a breach of the covenant to pay cash rent at the stipulated time, and that against waste, the plaintiff had a right to terminate the lease and maintain an action of forcible entry and detainer to recover possession of the premises. There are authorities on both sides of this question. 18 Am. & Eng. Ency. Law (2d ed.), 442 and notes. But an examination of those authorities will disclose that they are based on laws which differ materially from our own, consequently they are of little aid in the present inquiry. In *Stevenson v. Brodahl,* 49 Neb. 703, this court held that a provision in the lease, that the lessee should give a chattel mortgage on the crop each year to secure a note given for the rent, though supplemented with another stipulation that the nonperformance of any of the terms of the lease would, at the election of the lessor, end the lease, did not entitle the lessor to maintain the action of forcible entry and detainer. But in that case the provision in the lease in regard to the chattel mortgage was that it was to be given each year to secure the note due for that year. The breach relied on for maintaining the action was that no mortgage had been made on the crop of 1891, though de-

manded about October 31 of that year, to secure the
note falling due February 1, 1892. The decision as to
that point is placed on the ground that there is nothing
in the lease which required the lessee to give a chattel
mortgage at the particular time it was demanded, the rent
for 1891 having been paid and that for 1892 not being due.
The implication is that, if a mortgage had been demanded
at the time the lessee was required by the terms of the lease
to give it, and he had refused to give it, the action could
have been maintained. But, while such is the implication,
the question was not before the court, nor are we aware
of any case in which it has been directly presented to this
court, consequently we treat it as an open one. We be-
lieve it should be answered in the affirmative. We think
that parties should be permitted to make their own con-
tracts, and that so long as such contracts are lawful, and
not in violation of some established rule of public policy,
they should be enforced. The lease in this case was for
one year, but at the same time it was stipulated that, upon
the failure of the lessee to keep and perform certain cov-
enants of the lease on his part to be kept and performed,
the lessor should have the right, at his option, to terminate
it. We can see no good reason why this part of the con-
tract should not be enforced. It is one that can work no
hardship on the tenant if he performs his part of the con-
tract. If he elects not to do so, we are unable to see that
he has any just ground for complaint if the lessor accepts
the alternative offered by the lease.

Proceedings in forcible entry and detainer lie in all
cases against tenants holding over their terms. Sec. 1020
of the code. On the breach of the covenants as to the pay-
ment of rent and against waste, the term in this instance
terminated upon the election of the lessor to terminate it.
Thereafter the tenant was holding over his term, and the
action would lie. The plaintiff therefore made a *prima
facie* case, and the direction of a verdict against him was
error.

It is recommended that the judgment of the district

court be reversed and the cause remanded for further proceedings according to law.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.